Good morning, Your Honor. Glad we finally gave you oral argument. Yes, almost made it to the end of the year. May it please the court, I'm here today representing the defendant Michael Bourquin. I'd like to reserve four of my minutes for rebuttal, if I may. Thank you. Your Honors, after the 9-11 attacks, the Sentencing Commission amended the sentencing guidelines specifically to a 6.1. And when they amended that guideline, they did a couple different things. One is that they added threatening communications to that guideline and expanded that guideline to include that offense. The other thing they did is they added a four-point enhancement. And that four-point enhancement was designed to be imposed in cases where there was a disruption of either government function, or public function, or private business function by the communication, or in cases where the government was faced with a cleanup or a decontamination process, or other resulting charges and costs relating to that communication. Hence the distinction between substantial disruption and substantial expenditure? That's correct, Your Honor. And we basically are talking expenditure here? This is an expenditure case, yes, Your Honor. And so that section B, the substantial expenditure, is for toxic cleanups, it's for decontamination, or other related costs with regards to that. It was intended for those kind of cases in which something really bad happens and the government's faced with a big cleanup. It was not intended for a case such as this. And in this case is the most generic, maybe innocuous version of this kind of case that occurred. The events that occurred in this case occurred on August 8th. That is when the defendant in this case made that phone call and caused this fence to start rolling. By August 9th, the very next day, the case is over. The defendant is already admitted to the crime, he's submitted to a polygraph, he fails the polygraph, he admits to the crime, and the case is over. Yet somehow the district court imposed a four-level enhancement for this expenditure, of which there's nothing even in the record to support that there was an extravagant expenditure in this case. And so we're asking the court to overturn and to allow a resentencing in this case without that four-point enhancement. Now, I think I stated in my brief, and the government stated as well, there's not really a lot of case law on this particular enhancement. I cited to a Seventh Circuit case, and in that Seventh Circuit case, the court went through and found that there were over 200 person hours that were expended in that particular case, and found that that was close to the line as to whether or not that constituted substantial or not, but they... Yes, ma'am. This substantial expenditure, does it relate to whether this is a crime that's normally within that conceptual basis? I'm struggling with the idea that, as said, trial counsel said the government's investigation was normal. I mean, it was heavy and big and appropriate for the danger that was presented. Absolutely. But it was within that normal charged crime. Help me with what the test should be. If you fall within the mine run of cases, then does that suggest that the enhancement is not appropriate? Because you don't fall outside what the government would be doing any time it has a case charged under that portion of the statute. We would submit that that is the case, and that's the case for two reasons. One is how the guidelines normally operate. We have a base offense level, and then we have enhancements to that base offense level. Those enhancements are designed for not the norm. So the base offense level is always, this is the normal case. When you start adding facts that are not the norm to the normal case, that's when we start adding enhancements, such as leader or organizer, or obstruction of justice, things like that. Those are the basis for why we have those enhancements. Second, if you take a look at the laundry list that is within that particular guideline, the 2A6.1B4 guideline, it gives you a really good idea of what the Sentencing Commission was going after when it was looking at these substantial expenditures. When it talked about that government disruption, public disruption, what they were getting to is if the subway goes down in New York City for two weeks because of this, or if there is a toxic spill and it costs the EPA time to have to clean it up, they give you that laundry list of all those things that they were intending for this type of enhancement to apply to. That's what differentiates it from the mine run case. In this case, again, it couldn't be more mine run. As a matter of fact, if anything, it was less than the average case because of the rapidity of not only the investigation, but how quickly that investigation concluded. I know that the- We were talking about the Seventh Circuit case, wasn't it? The Kirkpatrick case is the Seventh Circuit case, yes. It's not 2,000 hours, not a year, not 20 hours, but maybe 200, isn't it? Maybe 200 is right, yes. How does that help you? It helps me because the government chose not to present any evidence on any hours. The government was aware of the fact that this was a contested sentencing guidelines enhancement prior to sentencing. They chose to not, in their sentencing memorandum or at the sentencing hearing itself, present any evidence whatsoever on what the number was, what we're looking at here. Now, I will admit, and I think my opponent points out, that there is some case law as to 2J1.3 that says that, well, we don't have to have a particular down to the number number. I will admit that probably in cases, you don't need to have an accountant figure it out down to the half hour. You need to come up with some evidence. You need to present something that shows this is over and above the norm on a case. In this case, everything that they pointed to, at least everything they pointed to anecdotally, shows that this is the average case, right? This was just an investigation that was average to this set of facts, this set of case. Nothing that took it out of, as you said, the mine run. Nothing that brought in extra resources or caused extra resources to be deployed in the investigation and presentation of the case. In my brief, I pointed out there were 3 different cases that I pointed out to that were where this enhancement was applied or where this charge was made on a similar offense. There are 3 cases, and it shows kind of what happened in those 3 cases and how it was far more significant than it was in this case, right? So in this case, we have the fact that the FBI had to drive 90 minutes to go and visit the defendant in this case. Well, he lives 90 minutes away from the nearest FBI office. I mean, there's nothing substantial about that whatsoever. And again, once they got there, they interviewed him, and then they went around town, tried to find some cameras that would show whether he met with somebody or not, got back, got a polygraph in place, had the polygraph, again, all in the same day, and then he fails the polygraph that same day, and then he confesses to the crime all in that same day. This is not the case. And again, this is a significant enhancement. So the base offense level here is 12. There was another enhancement, which we absolutely agree applies with regards to a government official being the victim in the case. We don't contest that whatsoever. But going from 12 and adding 4, that's one third more over on top of what the average base offense level is. It's a significant enhancement in this case, and as I stated in my brief, the guidelines range here is 37 to 46 months. The court imposed a sentence of 40 months. Without this enhancement, it immediately drops to 24 to 30 months. What's more, without this enhancement, the court can consider the last part of 2A6.1, which says that you can actually subtract 4 levels when all of the above don't apply. And so it could drop it down to, I think, 12 to 18 months in this case. So the enhancement is individual and greatly enhances the sentence. This is a really concerning case, what was done here. The threat is gravely concerning. Is that the mind run of those kinds of cases, or is this unusual? So the fact of the case, and I agree with the court that this is a disturbing set of facts in this case, right? But that's not the standard for whether this enhancement applies or not. And that's not the standard for whether substantial resources were expended in this case. It could be the most heinous version of the case, and if they solve it five minutes after it starts, that means that there's not substantial resources in the case, right? But I do agree with you, and that's probably part of the reason why the court may have sought that enhancement and the government sought that enhancement, because it's disturbing facts and the individual obviously has some mental issues. There was a mental competency exam that was done before he was allowed to plead guilty in the case as well. But again, bad facts shouldn't make bad law, and to allow the enhancement in this case is to literally open the floodgates for this to apply to every single one of these cases. Because I almost can't think of very many scenarios where this doesn't, where there is less cost than this case, because it again is a 24-hour period. What sort of deference do we give to the sentencing judge? None, because I'm talking about how the guideline applies to the facts of this case. It's de novo. Don't we review the findings of fact for clear error? The findings of fact are clear error, but the guidelines application to those facts is de novo, and that's what we're asking the court to do. Didn't the judge make a finding of fact that there was a substantial expenditure of funds? Isn't that a fact find? It's a legal conclusion. That is the legal conclusion of the guideline. Maybe it's mixed legal and factual. Absolutely. But even under, again, and I see my time is up if I can finish, what were really the thrust of our argument here is that the guideline was never intended to apply to facts such as this. Well, okay, intended, but we do construe the guidelines consistent with statutory construction rules, which we look at the text of the guidelines and look at what the text says? Absolutely. As opposed to the policy behind it? Absolutely, Your Honor. Okay, so the text bothers me a little bit too, because it doesn't use the word resources. It uses substantial expenditure of funds. Right. And here the government is saying, well, we used a lot of our resources, and I'm saying, okay, were there funds in addition to your normal resources? Right. It's a substantial expenditure of funds to otherwise respond to the offense. Yeah, and there's no evidence of any funds being expended. No, Your Honor, despite being on notice. They say, well, you have to reasonably infer that they must have been because we did this and we did that, and that's basically what the judge did. Yes, Your Honor. No, it's a difficult case. All right, any further questions? If it was sent back down, why would the government be barred from putting any evidence in the record? Because they shouldn't get a second bite at the apple in this case, because they were clearly put on notice that they should present evidence to support their enhancement. They government has the burden of production and persuasion for every guideline's enhancement. But this is not, you analogize to a case, it's a somewhat different scenario, isn't it? Yes, it's a different scenario, but it doesn't, their burden of production was no different. Okay, thank you. Thank you, Your Honor. Good morning. Good morning, may it please the Court. My name is Michael Freeman. I represent the appellee in this matter of the United States. The FBI mobilized seven different federal, state, and local law enforcement agencies in direct response to the information provided by the appellant that a former United States attorney was about to be kidnapped, raped, and set on fire, and expended at a conservative estimate over 100 man hours in that response that lasted from August the 8th of 2017 to August the 10th of 2017. Based off the questions, I have three points I would like to get to. The first being whether the government had met its burden of proof in regards to what was in the record. What is in the record to support this enhancement are two things. One would be the pre-sentence report that details the factual allegations, including the response on page 3 through 5. Additionally, the government filed a sentencing memorandum on document 30 under page ID 111 to 112, which again in more detail documents it. But didn't the court below say that there was no evidence of expenditure of funds in the record? I don't believe that is correct in terms of specifically that. And if you actually look at the record, while there isn't a grand total amount of hours or money, there is a particularized with specificity the number of hours that were expended. If you go through it... Are hours and funds synonymous? I mean, you say, I guess you're arguing that they are, but that's not what the sentencing commission used. The sentencing commission could have said a substantial expenditure of resources by the government, but they say funds. I mean, do funds mean man hours? And if so, what authority do you have for that? Yes, Your Honor. What authority is this court in United States v. Gerrard in a similar case using similar language, unnecessary expenditure of funds under 2J1.3 said that in that particular case they had moved equipment from Washington, D.C. to Detroit. They had deployed surveillance teams to be prepared, if necessary, to respond to the false information that was provided. And in that particular case, this court in United States v. Gerrard found that that was sufficient under the same words, substantial expenditure of funds. And the reason being of that is that with funds working around the clock, this is through all evenings on both August the 8th of 2017 and August of the 9th of 2017, that these people are paid overtime, they're paid their salaries to respond to that. And therefore, yes, that man hours in particular... You're talking about moving equipment. Those are expenditure items. I'm struggling with why excessive expenditures or how that relates to people who are employed by the government already doing the job that they're employed to do. It seems to me that there's a lot of intentional difference in disruption of work versus expenditure of funds. And the problem for me is it's your burden by preponderance of the evidence to show it. And other than general information of a response in already existing documentation, nothing was put into the record at all. With due respect, Your Honor, I disagree with that. As indicated in the PSR and more particularly in the government sentencing memorandum, they talk about how the FBI received the tip from West Virginia. It took several hours to transcribe and check... No, I'm talking about... Did they call any witnesses? Did they call anybody to come and submit anything in addition to the normal PSR information of here's how the crime occurred, here's what happened? I just didn't think that there was anything submitted in an effort to carry the burden to show excessive expenditures. One, there is a pre-sentence report. Then there's the government sentencing memorandum. But what I'd highlight is at the district court level, the appellant did not object to any of the factual basis of it. They objected to the ultimate conclusion of it, but it is... They didn't object to the factual basis, but they did object to the enhancement, correct? Because what they said was that, and nobody denies I think that this was a terrible crime, the allegations, which at the time the government took reasonable efforts to quickly investigate. And as you acknowledge, this went from the 8th of August to the 9th of August. The basic guidelines take into account this particular crime. What we're talking about now is the information put in the record to support and justify the enhancement. And that's what I think the government put nothing in there to establish their position that these additional or extraordinary expenses were incurred. I have a few points on that, Your Honor. First of all, it goes into August the 10th of 2017. So it starts in August 8th of 2017. It does not conclude until August 10th of 2017. When he admitted... That's correct, Your Honor, after his polygraph examination in the early morning hours of August the 10th of 2017. But it is routine at the district court level that the things contained in the PSR or proffered by the government, if they go uncontested, are relied upon for enhancements. And therefore, at the district court level, the appellant even conceded that all the facts alleged in the pre-sentence report and in the government sentencing memorandum were true. They just disagreed with the ultimate conclusion. So there's a significant portion of the record in those two documents to indicate that there was over 100 man-hours at a very conservative estimate in response. And even if there's 100 man-hours, what is there to support that that meets the requirements of this extraordinary expense? I think it's a matter of whether or not that assertion, even if we find that the person that they spent 100 hours, does that meet the definition of this extraordinary expense under the guidelines? I think that's the issue. And what makes this extraordinary expense as opposed to the expense of investigation? Yes, Your Honor. On that point, I don't think it's the appropriate standard that it has to be unusual or above the average. Take, for instance, this routinely happens in other cases, say child exploitation cases. Under 2G 2.2, there are enhancements that are applied to the routine case, number of images, prepubescent, use of a computer. In the drug contest, there's the use of a firearm connection with a drug that are applied to the average or usual case. So it's the idea that it has to be extraordinary or above the quote-unquote average case is not supported by the case law. The only case that they cite... Isn't that because those statutes specify objectively quantifiable information? And an objectively quantifiable piece of evidence satisfies that. So you get the enhancement. Here the question becomes whether you have any evidence in the record that is objectively quantifiable as to a substantial expense. If substantial expense is what goes on in the normal case, then why is this an enhancement? Because what you have is you have a normal mine run case. That's substantive reasonableness, black letter law. So you got the normal case. That's what you're charged with. That's what you're convicted of. Then you have a question as to whether there is an appropriate enhancement, meaning it's a matter of degree beyond what the normal case would have. If it weren't, how could it be an enhancement of the normal charge? Well, first of all, the guidelines work. There are over 25 statutes that refer to this particular guideline enhancement. So it could be the base or average of making threats, making hoax, but also what's contained in this guideline are false liens. So the base offense level doesn't start with the average terrorist threat to kidnap and kill a former United States attorney. It starts with the average among the aggregate of all of those statutes. So for a specific offense characteristic to apply, you should not look at it in terms of a threat to kidnap a former United States attorney. If anything, that's already extraordinary in terms of to kidnap, rape, and set on fire the United States attorney. And therefore, that the government responds with an all hands on deck reply. Gets seven different agencies involved. For 24 hours. I mean, that's my concern because I would expect any crime like this that's charged with this horrendous type of threat that the government would absolutely respond with all hands on deck. That's the expectation. Now the question becomes whether there is substantial expense, not just by all the people who already give their time and work and jobs and life to government service, but something beyond what is normally done, which leads us to a burden of proof that is required. And I'm concerned that under your argument, anybody who could be charged under the charge that was given for this case is also guilty of substantial disruption or substantial expenditure because that has become the nature of the case. No, Your Honor. With a few things. One, you could be charged with this particular offense for far less egregious or salacious activity. And so therefore, the degree was elevated by this particular defendant's action. So you could be charged under this 844E and not set off the alarm bells in which Mr. Borkin did in terms of 24 hour United States martial protection. They would not provide that for someone who was not a former government employee. And so the idea is that this was already not a run-of-the-mill case just based off of the information contained in the false information. And therefore, just like... Even though this grew, Adam, in addition to a terrorist threat statute, you would say that this is an unusual claim? Well, first of all, this guideline was amended in 2008, Amendment 718, that added false liens. So it is not entirely just a terrorism statute. And to that point, is terrorism is actually defined in the United States Code. It's a term of art. Under Section 2331, domestic terrorism is defined as any act that endangers human life intended or appearing to intend to affect government policy within the territory of the United States. So this is terrorist activity, the government would argue, when you threaten to kidnap, set on fire a former United States attorney for her conduct as a United States attorney, this is precisely terrorist activity. It's precisely by definition under the United States Code, a domestic terrorist act, if it were to be true. So any time you make that kind of a threat, even if it's resolved within 24 hours, it's automatically substantial disruption and substantial expenditure? Well, first off, Your Honor, it was more than 24 hours. As indicated, it started August 8th of 2017. Well, okay, 30 hours. I mean, we're talking about a number of hours. There was a little bit more time because it took them a while to go find the guy and get him. And then they hit it. I mean, there's no question they hit it for 24 hours. But it was 24 hours. I'm struggling with this becoming the nature of the charge. And that's not what enhancements are for. But during that 24-hour period, as indicated in my opening statement, seven different agencies get involved, from Raleigh, North Carolina, FBI traveling to Buckner, North Carolina, a person being put in solitary confinement based off of this information, the United States Marshal Service issuing 24-hour surveillance on this particular home. Yes, it was 30 hours, as you have indicated, but it expanded geographically. It expanded state, local, and federal agencies. And therefore, this is above and beyond the typical or the average case as charged with this. Did you help me understand why the government just didn't call somebody or put in an affidavit that said, this cost a fortune. Here's what it did. In general, we have an extra 200, or you said 100. In general, we would have an extra 50 hours that we wouldn't have done. And that's an expenditure of X. Why doesn't, since it's a requested enhancement, why doesn't the government have additional proof of the enhancement placed into the record? That doesn't seem to me to be a difficult thing to do and honors the fact that this is an enhancement to a charge. Well, two things. As indicated before, the appellant did not object to any of the facts that were put into the record. And what's contained in the records of explaining all the different federal agencies involved, all the different man hours to a degree, were specified within the record in the government sentencing memorandum and the pre-sentence report. And so there is enough contained already in the record to make the finding that a four-level enhancement. Just like the court did in Girard, this is not distinguishable from that in terms of someone testified that they were going to be engaged in terrorist activity. They moved equipment, but the only other things they did were get a surveillance team on standby. And the court found, this court, the Sixth Circuit found that that was enough for a substantial expenditure of funds. And this case is no different from that. And so there's already enough in the record in order to confirm the district court's ruling. And just with that, your honors, we believe that the district court properly applied the questions. I see that my time is up. Thank you. Thank you, your honor. Just a couple matters. First, with all due respect to opposing counsel, this 100 person hours is a new fact today. You will not find that in the record anywhere. And that's part of the problem, right? But you're not going to find that in their sentencing memorandum. You're not going to find that in the PSR. This is a new piece of evidence that they're seeking to put before you, this 100 figure. Well, they argued Girard resolves all this. Yeah. Well, no. So there's several problems with Girard. Number one, it's a 2J1.3 case, not our case, right? Number two, Girard, not only was it an unpublished case, but it was an Anders brief. So the court made a general review trying to come up with issues and did that analysis on that case. This is an issue of first impression with this circuit. It is, your honor. Yeah, it is. And that leads me to, I think, Judge Griffin's questions about the differences in the mixing of apples and oranges here and the term of funds, right? Because on 2A6.1 before, it's a substantial expenditure of funds to clean up, decontaminate, or otherwise respond to the offense. Under the 2J1.3, the language is, number one, the guideline is substantially interfering with the administration of justice. The commentary notes say that the substantial interference with the administration of justice includes unnecessary expenditure of substantial governmental or court resources, not funds resources, which resources obviously could include person hours. And that's why it's broader, and that's why it's mixing apples and oranges, to just take that 2J1.3 case law and convert it over to this particular guideline. Unless there are any further questions, we would ask this case to be remanded for recess. Other questions? All right. Thank you. Thank you, counsel, for good arguments. Case will be submitted. It's my understanding that concludes the oral argument docket this morning. If so, you may adjourn the court. The Honorable Court is now adjourned.